## HOOKLESS FASTENER CO. v. G. E. PRENTICE MFG. CO.

(District Court, D. Connecticut. June 15, 1926. On Petition for Rehearing, July 21, 1926.)

### No. 1766.

**1. Patents ⬅⟲328.**

Sundback patent, No. 1,302,606, claims 4, 5, 6, each for a slider for hookless fastener, *held*, as to claim 4, anticipated; as to claim 5, valid and infringed; and, as to claim 6, valid but not infringed.

**2. Patents ⬅⟲328.**

"Interlocking means," an element of Sundback patent, No. 1,302,606, claim 5, for slider for hookless fasteners, *held* sufficiently broad to include any kind of uniting or connecting means, as solder.

#### On Petition for Rehearing.

**3. Patents ⬅⟲328.**

Sundback patent, No. 1,302,606, claim 5, for slider for hookless fastener, not specifying the nature of slot in slotted connection, covers an open as well as a closed slot.

In Equity. Suit by the Hookless Fastener Company against the G. E. Prentice Manufactuing Company. Decree in accordance with opinion.

Julian S. Wooster, of New York City (Henry F. Parmelee, of New Haven, Conn., on the brief), for plaintiff.

Robert Cushman, of Boston, Mass., for defendant.

THOMAS, District Judge. This is a suit for alleged infringement of United States letters patent No. 1,302,606, issued May 6, 1919, to Gideon Sundback, and by him assigned to the plaintiff. The invention relates to sliders for separable fasteners of the

type where two stringers, generally of fabric tape, have fixed thereto metallic interlocking devices, which are operated to lock and unlock by the movement of the slider back and forth. An examination of the patent shows that it is for the slider, per se, and not for the fastener, nor for any adjunct of the fastener.

The particular object of the invention, as stated in the specification, is "to provide a slider which will not spread when subjected to a heavy strain, and which can be actuated positively in both directions from either side by a single pull, thus requiring the operator simply to grasp the free end of the operating device and pull the slider in one direction to close the fastener and in the opposite direction to open it."

There is another object mentioned in the specification of the patent, viz. to shape the slider so as to prevent the fastener from being opened by pulling the stringers apart; in other words, to hold the fastener locked against opening under lateral tension, as distinguished from the slider shown in patent No. 1,219,881, to which comparative reference is made in the specification. This object the patentee accomplished by forming diverging channels in the slider, meeting at a definite angle. This feature is not defined by the claims in suit and need not be considered.

The patent in suit has 15 claims, but plaintiff relies here upon claims 4, 5, and 6, which read as follows:

"4. A slider comprising connected wings forming diverging channels and having stiffening means extending beyond the channel intersection on each side, and actuating means carried by said stiffening means.

"5. A slider comprising wings forming diverging channels and having a slotted connection, stiffening means inserted in said slotted connection and extending lengthwise on each wing, and means interlocking said stiffening means with the wing connection.

"6. A slider comprising connected wings forming diverging channels, and stiffening means extending lengthwise on each wing and engaged therewith at each end."

The slider described in the patent in suit comprises a body, composed of a stamping having flat wings, which are provided with turned edges, turned in at a right angle as shown in one figure of the patent, or at an acute angle as shown in another figure of the patent. The inturned edges on the wings are straight, but are disposed at an acute angle to each other, and end in straight portions forming channels through which the inter-locking members of the hookless fastener pass. At each end of the wings is provided an upturned lug having a perforation, and connecting the wings is a neck having a slot. The blank thus obtained is doubled over on itself, so as to bring the inturned wings adjacent and in registry with each other; the lugs projecting outwardly on each face of the body so obtained. A stiffening yoke is first stamped from sheet metal in two different forms and comprises a body having flanges around the edge, a longitudinal slot in the middle forming narrow necks, and a key slot near each end. This blank is doubled over so as to bring the flat faces back to back with the slots registering as shown in Fig. 10 of the patent. The necks now project beyond the flanges, and these projections fit into the perforations in the lugs. The yoke member shown in Fig. 10 is thus generally U-shaped, and is slipped over the slider body until it is stopped by reaching the bottom of the slot, in which position the projections of the yoke are seated in the perforations in the lugs. In order to lock the yoke against withdrawal from the slider body, a key or pin, composed of a narrow, flat strip, is passed through the slots in the yoke immediately under the bent neck of the slider body. The ends of the key are bent down on each side, as shown in Fig. 2, to form guiding surfaces for the interlocking stringer members of the hookless fastener. As appears from Fig. 2 of the drawings, the three elements of the slider so far described form a Y-shaped passage through which the interlocking members pass.

One of the features of the yoke is to hold the slider body rigidly against spreading, the yoke extending throughout the entire length of the slider body and being interlocked with the lower end of the slider body. In addition to the function of stiffening the slider body, the yoke serves also as the means of connection between the slider and the pull or actuating means. This pull consists of a stamping having inturned lugs, separated sufficiently to receive the combined thickness of the two yoke flanges. The pull device is adapted to travel around on either side of the slider body, so that the slider is capable of being actuated in either direction, on either side. In Figs. 15 and 16 a construction is shown in which the pull does not travel at all.

From the foregoing it appears that the patent in suit describes a three-piece slider, consisting of the slider body, the reinforcing yoke, and the locking key. The claims in suit, however, are not limited to such construction.

The defenses are invalidity and noninfringement. It appears from the record that hookless fasteners and sliders co-operating therewith were old and well known many years prior to the filing date of the application which resulted in the patent in suit which was June 20, 1917. For instance, the Judson patent, No. 504,038, issued August 29, 1893, shows and describes a hookless fastener, the strings of which are operated by a slide which comprises connected wings forming diverging channels, as clearly appears from both the specification and claims of that patent. This slide is provided with actuating means which permit the slide to be operated in either direction; that is, to either engage the elements of the fastener or to disengage them. In the Judson patent, No. 557,207, issued May 31, 1896, there is also shown and described a slider comprising connected wings, and the diverging channels formed by the connected wings. It is obvious that "diverging channels" means merely two diverging passageways through which the separated fastener stringers pass. Such passageways are clearly shown in patent No. 1,219,-881, issued to Sundback on March 20, 1917, and assigned to this plaintiff.

The record discloses the fact that the inventor, Sundback, experienced troubles with the slider described in the last-mentioned patent, because, as Sundback testified, the two wings of the slider opened up at times when crossways strain was applied to the fastener, and, when accidentally any object became wedged between the fastener and the slider, the two wings opened up. In so testifying Sundback had reference to Plaintiff's Exhibit No. 7, the so-called hookless fastener No. 2. It appears that this fastener has an outside stiffening member, which strengthens the wings only to the point of the intersecting channels. Sundback thereupon experimented in order to obtain a slider which would be materially stronger than any slider previously produced by him, and conceived the idea of carrying the outside stiffener beyond the intersection of the channels. It appears from the record, however, that this idea was not new with Sundback, because it is disclosed in British patent to Kuhn-Moos, No. 14,358 of 1912. The device described in that patent has a reinforcing yoke extending far beyond the channel intersection on each wing. Plaintiff claims that the Kuhn-Moos patent does not disclose the guiding diverging Y-shaped channels of the patent in suit. This claim is not well founded, because it appears, from the drawings of that patent, that a substantially Y-shaped channel is formed in the slider, and it also appears that the stiffening means extends beyond the channel intersection on each side of the connected wings of the slider.

[1] Bearing these facts in mind, it must be held that claim 4 of the patent in suit is invalid, in view of the Kuhn-Moos patent of 1912, which clearly shows a slider comprising connected wings forming diverging channels and having stiffening means extending beyond the channel intersection on each side, and having also actuating means carried by said stiffening means. If this claim could be limited to a slider made of a plurality of stamped sheet metal sections joined together in a specific way, I would be inclined to hold the same valid. Inasmuch as such limitations should not and cannot be read into the claim, I am constrained to hold claim 4 invalid.

The validity of claim 5 is not seriously questioned. The defendant alleges that this claim, if construed to include soldering, welding, or similar means for uniting the yoke and wings in a solid integral structure, is substantially anticipated by the Kuhn-Moos British patent. I am unable to agree with this contention, because this claim calls for wings having a slotted connection, in combination with stiffening means inserted within said slotted connection. No construction of this type has been introduced in evidence, no prior art or prior use has been proven, and I must therefore hold that claim 5 is valid.

Claim 6 also must be held valid, as it calls for stiffening means extending lengthwise on each wing of the slider body and engaged therewith at each end. This arrangement is entirely novel with the patentee. It must be held, however, that this claim requires that the stiffening means extend through the entire length of the slider body and be interlocked with each wing at the lower end of the slider.

Coming now to the question of infringement, it is noted that plaintiff contends that defendant's sliders represented by Plaintiff's Exhibit 3 and by Defendant's Exhibit N infringe claims 5 and 6, and that defendant's slider represented by Plaintiff's Exhibit 4 infringes claim 6 of the patent in suit.

The elements of claim 5 are: (a) Wings forming diverging channels and having a slotted connection; (b) stiffening means inserted in said slotted connection and extending lengthwise on each wing; (c) means interlocking said stiffening means with the wing connection.

[2] Defendant's slider, represented by

Plaintiff's Exhibit 3, is made of a plurality of parts formed by stamping operations. Without doubt it comprises elements (a) and (b) of the claim. As to element (c) defendant raises the question whether the solder used in uniting the body of the slider with the stiffening means may be termed "interlocking means." Defendant contends that this term should be interpreted to describe a key, pin, or like mechanical uniting means. I cannot agree with this contention, as the term "interlocking means" is sufficiently broad, so as to include any kind of uniting or connecting means. It would be contrary to public policy to permit a defendant to copy plaintiff's slider in its entirety, and to use solder for uniting its elements, rather than the key or pin described in the patent in suit. As I view it, this invention has real merit, and it has advanced the art very substantially, and the inventor should be secured the reward he deserves. I therefore hold that defendant's slider, represented by Defendant's Exhibit N, infringes claim 5 of the patent in suit, and it differs from Plaintiff's Exhibit 4 only in the respect that the wing connecting means is cut off on one side of the stiffening means. This, however, is too trivial a change to avoid infringement, and was evidently suggested in order to avoid infringement.

Considering the terms of claim 6 and my interpretation of it, I find that neither Plaintiff's Exhibit 3 nor Defendant's Exhibit N infringes this claim. In neither of these two exhibits do the stiffening means engage the ends of the wings opposite the connecting means. It has been argued by plaintiff that in both of these exhibits the wings are provided with grooves or ribs, and that these, together with the stiffening means, extend throughout the entire length of the wings and therefore infringe. I hold, however, that these grooves or ribs are not "engaged" with the ends of the wings in the ordinary sense of the word, nor are they interlocked, as the claim requires when interpreted in the light of the specification of the patent.

Defendant's slider, represented by Plaintiff's Exhibit 4, includes a stiffening means which extends lengthwise on each wing of the slider body; the stiffening means being in the form of a substantially U-shaped flat riveted yoke inserted through slots in the wings close to the channel vertex. This construction, obviously, does not infringe claim 6, because the stiffening means is not engaged with the wing ends.

I therefore conclude that claim 4 of the patent in suit is invalid, and that claims 5 and 6 are valid; that defendant's sliders, represented by Plaintiff's Exhibit 3 and Defendant's Exhibit N, infringe claim 5, but do not infringe claim 6; and that defendant's slider, represented by Plaintiff's Exhibit 4, does not infringe claim 6; and there may be a decree accordingly.

### On Petition for Rehearing.

[3] Defendant petitions the court for a rehearing on the question of infringement of claim 5 of the patent in suit by Defendant's Exhibit N, and for a revision of so much of the opinion as holds that Defendant's Exhibit N is an infringement of claim 5. Defendant now avers that, inasmuch as claim 5 was sustained upon the feature of the slotted connection between the wings with the stiffening yoke inserted in the slotted connection, the holding that Defendant's Exhibit N infringes claim 5 is necessarily a holding that Exhibit N has a slotted connection between the wings and that the stiffening means is inserted in said slotted connection, and that such a finding is a mistake in fact, because there is no slotted connection between the wings, and the stiffening means is not and cannot be inserted in the slotted connection, because no such slotted connection exists. In support of its argument, defendant submits two sketches of the blanks from which Plaintiff's Exhibit 3 and Defendant's Exhibit N are made, and points out the alleged differences between these two blanks.

All the points that defendant relies upon in its petition for rehearing were carefully considered in reaching the conclusions expressed in the opinion, and I still adhere to the finding that Defendant's Exhibit N infringes claim 5. The only difference between the two exhibits lies in the fact that in Plaintiff's Exhibit 3 a closed slot is employed, while in Defendant's Exhibit N an open slot is used. The slots are in both devices, and are in the connection between the wings of the blank. In both devices the stiffening means is inserted into the slotted connection and exists lengthwise on each wing. This is all that claim 5 requires. The claim does not specify the nature of the slot, and it is entirely immaterial for what purpose the open slot in Defendant's Exhibit N is designed.

It follows, therefore, that the petition for a rehearing and revision of the opinion must be, and the same is, denied.